The Honorable Bobby Glover State Senator Post Office Box 1 Carlisle, AR 72024
Dear Senator Glover:
I am writing in response to your request for an opinion, attached from a constituent, on the following:
 Question 1
 Pursuant to [Op. Att'y Gen. 94-260], and the attached City of Cabot ordinance number 57, dated 11/29/2001, and ordinance number 92 dated December 1, 2005, that the full time city attorney's position created by ordinance number 57 of 2001, is still a full time position. Ordinance number 92 of 2005, appointing an interim city attorney to fill the unexpired term of the person that resigned, specifically allowed the interim person to continue his outside law practice. Is the position a full or part time position at this time?
 Question 2
 Can this position be changed after the closing date for filing for city attorney and the preferential primary? That is, can it be changed from a full time to a part-time position?
 Question 3
 If the position is a full time position will the elected Attorney be able to divide His or Her time between the City of Cabot and a private practice?
RESPONSE
I regret that I am unable to provide an opinion in answer to Question One and Question Three. It has long been the policy of the Attorney General's Office to decline to construe the provisions of local ordinances. See Ops. Att'y Gen. 2004-173; 2003-263; 2003-260; 2002-306; 2001-374; 99-287; and 97-038. As I stated in Op. Att'y Gen. 2003-063 with regard to a city ordinance:
 [T]he interpretation of local ordinances is a matter outside the domain of the Attorney General. The interpretation of such ordinances necessarily involves a determination of the intent of the city council, a factor that this office is not well situated to consider and address. It also requires consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the city council that is not apparent from the face of the ordinance. The awareness of such factors is a matter within the local domain, rather than the domain of this office. An interpretation of the legality of a specific ordinance that is the subject of your question therefore must ultimately be handled locally, through the interested parties and their counsel, or through a medium that can consider local factual matters, such as a court.
Op. Att'y Gen. 2003-063 (quoting Op. Att'y Gen. 2002-306 at 3). I have also explained that:
 My predecessors and I have issued opinions, however, discussing local ordinances to the extent necessary to determine the application of state law (see Op. Att'y Gen. 2003-260), or where the discussion did not raise questions of intent under a local ordinance. See Op. Att'y Gen. 2001-158.
Op. Att'y Gen. 2004-173.
Questions One and Three both appear to require analysis only of the wording of the ordinances in question and the intent of the city council in passing these ordinances. Despite reference to a previous Attorney General's Opinion, interpretation of that opinion would not obviate the need to interpret the local ordinances and attempt to divine local legislative intent. I regret that I am unable to offer an opinion on these matters for the reasons set out above.
With respect to your second question, in my opinion, the city council in all likelihood may change the office of city attorney from a full-time position to a part-time position after the closing date for filing and the preferential primary. The city council should be aware that certain practical problems may arise if such a change is made during the election cycle and that any changes made to the essential characteristics of the office must be done in a constitutional manner.
Cabot is a city of the first class with fewer than 50,000 residents organized as a mayor-council form of government. The Arkansas Code generally states:
 The . . . [city] attorney shall give the bond, perform the duties, and receive such salary as is prescribed by ordinance in each of these cities.
A.C.A. § 14-43-313 (Supp. 2005). Specifically addressing the office of city attorney in a city of the first class with fewer than 50,000 residents, the Arkansas Code states in pertinent part:
 (a) The qualified voters of cities of the first class having a population of fewer than fifty thousand (50,000) and having a mayor-council form of government shall elect a city attorney for four (4) years on the Tuesday following the first Monday in November 1970 and every four (4) years thereafter.
 (b) Incumbent city attorneys shall continue in office until their successors are elected and qualified.
A.C.A. § 14-43-315 (Supp. 2005).
While the plain and ordinary language of A.C.A. § 14-43-313
clearly would allow a city council to designate the position of city attorney either as a full or part time position by ordaining the duties and compensation of the office, your question relates to whether this may be changed after individuals declare candidacy for the position and have paid the applicable filing fees.
Although I have not found any previously issued Attorney General Opinions on your precise question, one of my predecessors described the city council's authority over the duties of the city attorney, and the council's ability to change those duties during the city attorney's term of office, as follows:
 It is my opinion that the city council can redefine the duties of the office of city attorney during the city attorney's elected term of office. The authority granted in A.C.A. § 14-43-313 to define the city attorney's duties is not limited in the time frame of its applicability. However, because the position of city attorney is an elected one, the city council cannot redefine the duties of the office in a manner that would subvert the will of the electorate or undermine the purposes for which the voters elected the particular person who holds the office. For example, it would be inappropriate for the city council to divest the office of its duties or to reassign the duties to another person. See Ops. Att'y Gen. Nos. 96-091 and 95-187. In any event, it is my opinion that the city council may, under its authority to define the duties of the office of city attorney, redefine such duties if it does so in a manner that would not affect the integrity of the elective system.
Op. Att'y Gen. 97-038. I concur with my predecessor's reasoning and conclusion.
There do not appear to be any express statutory prohibitions on the city council changing the city attorney's position from full-time to part-time after the filing deadline or the preferential primary. To the extent changing the office of city attorney from full — to part-time would also decrease the compensation of the city attorney, Arkansas Code Annotated §14-42-113 (Supp. 2005) may also be implicated. It provides in pertinent part:
 (a) The salary of an official of a city of the first class . . . may be increased during the term for which the official has been elected or appointed and may be decreased during the term only if requested by the official.
Id.
This limitation, of course, applies only during the term of the official. I have previously opined that Arkansas statutes do not expressly prohibit a city council from reducing the compensation of city officials after the election, but before the new official takes office. Op. Att'y Gen. 2004-355. I concluded in that opinion, however, that the salary of an officer cannot be reduced to an unreasonable level, or in a manner that is constitutionally suspect.
One of my predecessors has also concluded that the determination of whether a mayor would work full-time or part-time could conceivably be made after the election, but that "reason dictates that the essential characteristics of an office" be established prior to the pertinent election. Op. Att'y Gen. 94-260 at fn. 2. Whether the decision to make an office part-time or full-time is made after the filing deadline closes, as in your question, or after the election actually takes place, as in the opinion cited above, making the determination at such a late date raises practical concerns regarding whether the candidates for the office are able to make informed decisions to seek election to the office.
Constitutional concerns can also come into play. For example, the Eighth Circuit Court of Appeals held the city council's reduction of the salary of the office of city attorney to one dollar a year and a prohibition on the private practice of law on the eve of the election by an unopposed candidate were unconstitutional bills of attainder. Crain v. City of Mountain Home,611 F.2d 726 (8th Cir. 1979). In Crain, the ordinances were found to be punitive in nature, especially where the city council subsequently passed a resolution to hire a separate attorney to meet the city's legal requirements. Id. The Eighth Circuit recognized that the ordinances at issue were designed to punish the sole candidate who was thereafter duly elected as city attorney and that the city council, while authorized to determine the duties and responsibilities of the city attorney, had exceeded its authority by enacting ordinances that were actually bills of attainder against the city attorney. Id.
As I stated in Op. Att'y Gen. 2004-355,
 Cities should be cognizant of potential problems with salary reductions [after election but before the beginning of the new officer's term], however. For example, one of my predecessors has concluded that "the Arkansas Supreme Court has made statements that would indicate by implication that a city is expected to pay its officers salaries that are commensurate with the duties performed, i.e., a reasonable salary" and that "the city's governing body would be well-advised to designate a salary that is commensurate with the value of the services rendered by the clerk-treasurer." Op. Att'y Gen. 95-186. In addition, attempts to unreasonably reduce the salary of elected officials have led to successful lawsuits against cities. See, e.g., Crain [, supra] (striking down as unconstitutional an ordinance passed on the eve of the election reducing city attorney's salary and prohibiting him from the private practice of law as an unconstitutional bill of attainder and also awarding attorneys fees).
In my opinion, there is no express statutory impediment to prevent the city council from changing the designation of the city attorney from a full-time position to a part-time position after the closing date to file for the position or the preferential primary. However, the city council should be cognizant of the practical difficulties that could arise if the essential characteristics of the office are changed after the election or they are changed in an unconstitutional manner, such as in Crain, supra.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB:JMD/cyh